UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| FRED TAYLOR, ET AL | : | NO. 5:13 CV 02227 |
| | : | |
| VS. | : | JUDGE FOOTE |
| | : | |
| CITY OF SHREVEPORT, ET AL | : | MAGISTRATE JUDGE HORNSBY |
| | : | |

# MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

BREEDLOVE LAW FIRM

By: s/ Pamela N. Breedlove
Pamela N. Breedlove, Bar Roll No. 21773
216 Rolling Meadow Lane
Bossier City, LA 71112
P.O. Box 8667
Bossier City, LA 71113-8667
Telephone : (318) 423-0845
Facsimile : (318) 553-5176
ATTORNEYS FOR PLAINTIFFS FRED TAYLOR, VICKIE WILLIAMS, AND JESSICA WALKER, INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED OFFICERS OF THE SHREVEPORT POLICE DEPARTMENT

# TABLE OF CONTENTS


TABLE OF AUTHORITIES. . . . . . . . . . ii

I. SUMMARY OF ARGUMENT. . . . . . . . . . 1

II. FACTUAL AND PROCEDURAL BACKGROUND. . . . . . . . . . 2

A. Sick Leave Policy Requires Improper Medical Inquiry of Disability. . . . . . . . . . 2

B. City Admits the Sick Leave Policy and SPD Form Request Future Condition and Disability Information. . . . . . . . . . 3

C. City Policy and SPD-3 Request Unnecessary Medical Information. . . . . . . . . . 4

D. Policy Provides Method for Proper Inquiry and Evaluation Such That Improper Inquiry is Unnecessary . . . . . . . . . . 5

E. Medical Information Is Not Secured and Often Disclosed. . . . . . . . . . 5

F. Fifth Circuit Remanded Case. . . . . . . . . . 6

III. LAW. . . . . . . . . . 6

A. Rehabilitation Act Prohibits Medical Inquiries. . . . . . . . . . 6

B. Employer Bears Burden of Establishing Business Necessity. . . . . . . . . . 8

C. Use of Minimal Sick Leave Does Not Create Business Necessity. . . . . . . . . . 10

D. Louisiana Law Claims Should Not Be Dismissed on the Pleadings. . . . . . . . . . 11

1. Right To Privacy. . . . . . . . . . 11

2. State Civil Service Law. . . . . . . . . . 12

IV. ARGUMENT. . . . . . . . . . 13

A. SPD 301.06 and SPD-3 Violate Rehabilitation Act. . . . . . . . . . 13

1. Undisputed Policy and Form Inquire About Future Disability Issues. . . . . . . . . . 13

2. Inquiry Triggered Solely By Third Absence of Year. . . . . . . . . . 13

3. City's Argument Fails to Meet Required Standard. . . . . . . . . . 13

4. Automatic Inquiry is Overbroad and More Intrusive than Necessary. . . . . . . . . . 14

4. Automatic Inquiry Is Not Based on Reasonable Determination of Officer. . . . 14

B. State Law Claims Should Not be Dismissed. . . . . . . . . . 15

CONCLUSION. . . . . . . . . . 15

# TABLE OF AUTHORITIES


**Fifth Circuit Cases**

*Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

**Other Circuit Cases**

*Brownfield v. City of Yakima*, 612 F.3d 1140 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Conroy v. N.Y. State Dep't of Corr. Servs*., 333 F.3d 88 (2d Cir. 2003). . . . . . . . . . . . . . . . 8, 14, 15

**District Court Cases**

*Fountain v. N.Y. State Dep't of Corr. Servs.*, 99-CV-389 (N.D.N.Y June 23, 2005); 2005 U.S. Dist. LEXIS 12455. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fountain v. N.Y. State Dep't of Corr. Servs*., 190 F. Supp. 2d 335 (N.D.N.Y 2002). . . . . . . 10, 15

*Franklin v. City of Slidell*, 969 F. Supp. 2d 644 (E.D. La. 2013). . . . . . . . . . . . . . . . . . . . . 8, 9, 15

*Pa. State Troopers Ass'n v. Miller*, 621 F. Supp. 2d 246 (M.D. Pa. 2008). . . . . . . . . . . . . . . 10, 13

*Schnake v. Johnson Cty. Cmty. Coll.*, 961 F. Supp. 1478 (D. Kan. 1997).. . . . . . . . . . . . . . . . . . . 8

*Self v. BNSF Ry. Co.*, No. A-14-CA-618 (W.D. Tex. Feb. 8, 2016); 2016 U.S. Dist. LEXIS 15500. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Young v. UPS*, 2011 U.S. Dist. LEXIS 14266 (D. Md. Feb. 14, 2011). . . . . . . . . . . . . . . . . 8, 14, 15

**Louisiana State Court Cases**

*Ennis v. Department of Public Safety & Corrections*, 558 So. 2d 617 (La. App. 1 Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Fox v. City of Alexandria*, 07-810 (La. App. 3 Cir. 12/05/07); 971 So. 2d 468. . . . . . . . . . . . . . 12

*Richard v. Lafayette Fire & Police Civ. Serv. Bd.*, 08-C-1044 (La. 2/2/09); 8 So. 3d 509 . . . . . 12

*State v. Skinner*, 10 So. 3d 1212 (La. 5/5/09). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Federal Statutes and Regulations**

29 CFR 1630.13 (b). . . . . . . . . . 7

29 CFR 1630.14(c).. . . . . . . . . . 7

29 CFR PART 1630 APPENDIX. . . . . . . . . . 7, 15

42 USCS § 12112(d)(4)(A). . . . . . . . . . 7

**State Statutes**

La. R.S. 33:2214(B)(1). . . . . . . . . . 12

La. R.S. § 33:1995. . . . . . . . . . 12

La. R.S. § 33:2476.1. . . . . . . . . . 13

La. R.S. § 33:2477. . . . . . . . . . 13

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| FRED TAYLOR, ET AL | : | NO. 5:13 CV 02227 |
| | : | |
| VS. | : | JUDGE FOOTE |
| | : | |
| CITY OF SHREVEPORT, ET AL | : | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM IN OPPOSITION TO SUPPLEMENTAL MOTION TO DISMISS

FRED TAYLOR, VICKIE WILLIAMS, and JESSICA WALKER, individually and on behalf of the proposed class members, plaintiffs herein, through undersigned counsel, respectfully files this Memorandum in Opposition to the Supplemental Motion to Dismiss.

## I. SUMMARY OF ARGUMENT

The City admits that its policy and SPD-3 form request information regarding an officer's future likelihood of missing work. The only purpose served from inquiring into the possibility of missing work in the future is to reveal information regarding potential disabilities. This investigation is triggered by the third non-consecutive absence in a year and not by any reasonable belief that an officer is not capable of performing his duties – particularly as the inquiry is made *only after* a physician has released an officer back to full duty. The policy does not limit these inquiries to situations when the City has any belief, much less a reasonable belief, that the officer is not capable of performing his duties. Once a physician has determined that an officer is capable of performing the full duties of his position as an officer, there is no reasonable or permissible grounds to inquire into chronic conditions and possible future absences. Thus, SPD 301.06 and SPD -3 violate the

Rehabilitation Act and the Motion for Summary Judgment must be denied.

The court should also exercise its supplemental jurisdiction over the state law claims and deny the City's 12(b)(6) motion to dismiss same as plaintiffs have alleged claims under state law.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Sick Leave Policy Requires Improper Medical Inquiry of Disability

Section (V)(F)(2)(c) of the Amended Policy requires that plaintiffs have an SPD-3 form be completed by a physician after the second absence of each calendar year and produce documentation from a physician regarding the officer's complaint or diagnosis; the treatment provided; and state if the condition is chronic and whether intermittent absences related to the condition may be possible. *See 2013 SPD 301.06* as Document 3-2 at p. 7-8. *See also 2015 Amended SPD 301.06* filed herewith as Exhibit MSJ Opp. 1 at p. 7. Thus, an officer who missed one day in January, one day in April, must disclose all of this information if the officer misses one day in December – regardless of whether the officer had the same illness each time throughout the year.

The SPD-3 form in use at the time of filing required the physician to provide a diagnosis, treatment, complications issues, date of exams and surgeries, and then provide work status information including whether the **officer may return to full duty** and the date thereof, **whether the officer is totally disabled**; future re-examination dates; **whether *condition is chronic***; and specify the **prognosis and future treatment**. *See 2013 SPD 301.06.* at p. 28 (emphasis added). The 2015 form deleted the request for information regarding complications but added a request for information regarding infectious or contagious concerns – without any differentiation of the manner of transmission of an infection. *2015 Amended SPD 301.06* at p. 11.

The Work Status information requested from physicians on the SPD-3 does not specifically

limit itself to the reason for an officer's absence. The form instructs the physician to check all that apply. Thus, even though the physician has declared that the officer is fit to return to full duty and therefore capable of doing the job, the City is still seeking more information about future conditions.

**B. City Admits the Sick Leave Policy and SPD Form Request Future Condition and Disability Information**

The policy was amended to make clear that SPD-3 documentation is turned in upon returning to work. *2015 Amended SPD 301.06* at p. 6, ¶ F(2)(a). It specifically asks about possible future absences. Thus, inquiries regarding chronic conditions can only be used to discover the likelihood of future absences ad is intended to reveal or necessitate revealing a disability.

Deputy Chief Huddleston was not responsible for and had no input into the 2013 Policy Amendment and SPD-3 Form. *See Huddleston Depo Excerpt* filed herewith as Exhibit MSJ Opp 2 at p. 12, ln 4-13 and p. 43, ln 24 - p. 44, ln 10. Huddleston and was completely unaware of the amendment to the Policy and SPD-3 Form in 2015. *Id.* at p. 26, ln 13-25. Despite these admissions, the City submitted his affidavit in support of the need for the information regarding future absences due to chronic conditions. *See Huddleston Affidavit* filed as Document 39-1.

Huddleston admits that healthcare providers are requested to provide information about the prognosis and expected further treatment of chronic conditions. *See Huddleston Aff.* at ¶ 5. Huddleston admits that the chronic condition portion should only be completed if the healthcare provider returns the officer to full duty. *Id.* at ¶ 6.

Huddleston claims that "awareness of chronic condition that an officer may have which may require occasional absences from their job assignment, along with the need for future treatment, assists the Department in scheduling officers in order to provide adequate police coverage." *Id.* at ¶ 13. Huddleston claims that 'awareness of ***any*** chronic condition that an officer may have" allows

the department to determine if additional medical examination is necessary before allowing the officer to return to work – despite the physician releasing the officer to full duty. *Id*. at ¶ 16 (emphasis added).

Huddleston's affidavit contains general statements that awareness of chronic conditions and prognosis helps ensure the safety of other officers is safeguarded and whether the officer can perform essential functions. *Id*. at ¶ 14-15. However, his affidavit fails to explain how missing one day of work creates a need for the City to make these determinations. Huddleston fails to show how requiring this information for every time an officer misses one day of duty due to a chronic condition that has no impact on an officer's ability to perform his duties assists with officer safety or essential functions. Huddleston's affidavit does not state how awareness of a chronic condition due to an employee missing one day of work will impact that officer's ability to apprehend violent criminals or impair their judgment in the use of force.

Instead, the policy and form as written and Huddleston's affidavit all show that the inquiry is triggered solely due to taking a sick leave day. The inquiry has nothing to do with a chronic condition currently impacting an officer's ability to perform.

**C. City Policy and SPD-3 Request Unnecessary Medical Information**

The inquiry regarding possible future absences is seeking unnecessary medical information often after an officer has been absent just one day. Sgt. Carter testified that he has a hiatal hernia and ulcers caused by acid reflux but it does not affect his job performance. *See Michael Carter Depo Excerpt* filed herewith as Exhibit MSJ OPP 3 at p. 79, ln 17-22, p. 80, ln 3-5 & 82, ln 25 - p. 83, ln 4. However, if he were to miss a day of work due to this chronic condition and it happened to be the third day he missed in one year, then SPD 301.06 states the City may delve into his medical

information since it is a chronic condition.

There are countless other chronic conditions that officers may have that have no impact on the officer's ability to perform the duties of his job on a regular basis. For example, allergies to specific foods or plants, high cholesterol, low blood sugar, diabetes, hypertension, herpes, and acne. If an officer received treatment for any of these medical conditions when absent from work for one day, either because of this condition or in addition to the condition causing the absence, the City's policy and SPD-3 would require the information be provided. The most recent change the SPD-3 would require officers who receive medical treatment for a sexually transmitted disease which is chronic in nature but impossible to transmit outside of sex (like herpes), to disclose this information to the City.

**D. Policy Provides Method for Proper Inquiry and Evaluation Such That Improper Inquiry is Unnecessary**

The City's policy permits officers to complete a chronic long term injury form so that they do not have to go to the doctor every time they are sick. *Carter Depo* at p. 19, ln 22 -25. If the City thinks a person has a physical or mental problem, they have a right to ask for a company doctor consultation. *Id*. at p. 7, ln 15-18. The City's policy already provides for a Fit For duty examination either at the employees request or upon reasonable cause to question fitness which is defined as an injury, extensive use of sick leave and documented performance deficits. *See 2013 Amended SPD 301.06* at p. 3-4 at ¶ (V)(B)(1) and *2015 Amended SPD 301.06* at p 3 at ¶ (V)(B)(1). The policy goes on to describe in detail reasonable cause and the requirement to submit to an evaluation. *Id*. at ¶ 3 -6.

**E. Medical Information Is Not Secured and Often Disclosed**

SPD-3's are passed around and left laying inappropriately every day. *Carter Depo* at p. 26,

ln 14-1. You can walk through the patrol bureau and see one laying on the desk. *Id*. at p. 27, ln 19-21. Recently information from an SPD-3 was placed on Facebook. *Id*. at p. 29, ln 4-9. Plaintiff Corp. Walker previously testified that her supervisors were discussing her medical condition when she was absent. *See Document 12-1* at ¶ 5.

**F. Fifth Circuit Remanded Case**

The Fifth Circuit reversed the dismissal of plaintiff's facial challenge to the chronic condition provision contained within SPD 301.06 as the court found that the complaint "states a prima facie claim under the Rehabilitation Act, because that provision may very well be intended to reveal or necessitate revealing a disability." *Taylor v. City of Shreveport*, 798 F.3d 276, 286 (5th Cir. 2015). The court further instructed that the "City will have the burden to show that this aspect of the SPD-3 Form requirement is 'job-related and consistent with business necessity." *Id*.

The Fifth Circuit further provided that as the Rehabilitation Claim was erroneously dismissed, this court should decide whether to dismiss the state law claims under Rule 12(b)(6) since supplemental jurisdiction would still exist. *Id*.

## III. LAW

**A. Rehabilitation Act Prohibits Medical Inquiries**

The Fifth Circuit specifically determined in this case that "The Rehabilitation Act statutorily incorporates many of Title I's prohibitions on employment discrimination by reference, including § 12112(d)(4(A)'s medical inquiry prohibition." *Taylor v. City of Shreveport*, 798 F.3d 276, 283 (5th Cir. 2015). "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and

consistent with business necessity." 42 USCS § 12112(d)(4)(A). The federal regulations promulgated also limit medical inquiries. "Except as permitted by § 1630.14, **it is unlawful for a covered entity to** require a medical examination of an employee or to **make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability**." 29 CFR 1630.13 (b) (emphasis added). "A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions." 29 CFR 1630.14(c). The EEOC promulgated an Interpretive Guidance to further clarify these issues which explained Section 1630.14(c) Examination of Employees as follows:

> This provision permits employers to make inquiries or require medical examinations (fitness for duty exams) ***when there is a need to determine whether an employee is still able to perform the essential functions of his or her job***. The provision permits employers or other covered entities to make inquiries or require medical examinations **necessary to the reasonable accommodation process** described in this part. This provision also permits **periodic physicals to determine fitness for duty or other medical monitoring** if such physicals or monitoring are **required by medical standards or requirements established by Federal, state, or local** law that are consistent with the ADA and this part (or in the case of a federal standard, with section 504 of the Rehabilitation Act) in that they are job-related and consistent with business necessity.
>
> Such standards may include federal safety regulations that regulate bus and truck driver qualifications, as well as laws establishing medical requirements for pilots or other air transportation personnel. These standards also include health standards promulgated pursuant to the Occupational Safety and Health Act of 1970, the Federal Coal Mine Health and Safety Act of 1969, or other similar statutes that require that employees exposed to certain toxic and hazardous substances be medically monitored at specific intervals. See House Labor Report at 74-75.
>
> The information obtained in the course of such examination or inquiries is to be treated as a confidential medical record and may only be used in a manner not inconsistent with this part.

29 CFR PART 1630 APPENDIX (emphasis added)

"The employer may not inquire whether an employee has a disability unless the examination or inquiry is 'job-related and consistent with business necessity.' §12112(d)(4)(A); 29 C.F.R. § 1630.14(c)." *Karraker v. Rent-A-Center, Inc.*, 239 F. Supp. 2d 828, 834 (C.D. Ill. 2003). "'This provision permits employers to make inquiries or require medical examinations (fitness for duty exams) **where there is a *need* to determine whether an employee is still able to perform the essential functions of his or her job**.' 29 C.F.R. pt. 1630." *Young v. UPS*, 2011 U.S. Dist. LEXIS 14266, 49 (D. Md. Feb. 14, 2011) (emphasis added).

**B. Employer Bears Burden of Establishing Business Necessity**

"The employer bears the burden of demonstrating business necessity." *Franklin v. City of Slidell*, 969 F. Supp. 2d 644, 655 (E.D. La. 2013) (citations omitted). *See also Taylor v. City of Shreveport, supra* at 286. "Medical inquiries and examinations may be job-related and consistent with business necessity if 'an employee is having difficulty performing his or her job effectively. In such cases, a medical examination may be necessary to determine if s/he can perform essential job functions with or without an accommodation.'" *Schnake v. Johnson Cty. Cmty. Coll.*, 961 F. Supp. 1478, 1483 (D. Kan. 1997).

"In proving a business necessity, an employer must show more than that its inquiry is consistent with 'mere expediency.' An employer cannot simply demonstrate that an inquiry is convenient or beneficial to its business. Instead, the employer must first show that the asserted 'business necessity' is vital to the business. For example, business necessities may include ensuring that the workplace is safe and secure or cutting down on egregious absenteeism. The employer must also show that the *examination or inquiry genuinely serves the asserted business necessity* and that the request is ***no broader or more intrusive than necessary***." *Conroy v. N.Y. State Dep't of Corr.*

*Servs*., 333 F.3d 88, 97-98 (2d Cir. 2003) (emphasis added).

> Although it appears that the Fifth Circuit has never construed Section 12112(d)(4)(A), the Second Circuit has observed:
>
> The case law on inquiries directed toward individual employees thus demonstrates that courts will readily find a business necessity if an employer can demonstrate that **a medical examination or inquiry is necessary** to determine 1) whether the employee can perform job-related duties ***when the employer can identify legitimate, non-discriminatory reasons to doubt the employees's capacity to perform his or her duties (such as frequent absences or a known disability that had previously affected the employee's work)*** . . . [*Conroy*] at 98; *Brownfield*, 612 F.3d at 1146 (business exception applies before employee's work performance declines if the employer is faced with **"significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job**.") (internal citations omitted); *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999) (business necessity exception applicable "in any case **where a police department reasonably perceives an officer to be even mildly paranoid, hostile, or oppositional**"); *Yin v. State of California*, 95 F.3d 864, 868 (9th Cir. 1996) (business necessity exception applicable at summary judgment where employer showed, based on **employee's excessive absenteeism and declined productivity, that "health problems have had a substantial and injurious impact on an employee's job performance**.")

*Franklin v. City of Slidell,* 969 F. Supp. 2d 644, 655-56 (E.D. La. 2013) (emphasis added). *See also Self v. BNSF Ry. Co.*, No. A-14-CA-618 (W.D. Tex. Feb. 8, 2016); 2016 U.S. Dist. LEXIS 15500 ("An inquiry that is job-related and consistent with business necessity 'must, at minimum, be limited to an **evaluation of the employee's condition only to the extent necessary under the circumstances to establish the employee's fitness** ***for the work at issue***.'")(emphasis added).

"The business necessity standard may be met even before an employee's work performance declines if the employer is faced with ***significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job***. An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there ***must be genuine reason to doubt whether that employee can perform job-related functions***." *Brownfield v. City of*

*Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010) (emphasis added).

**C. Use of Minimal Sick Leave Does Not Create Business Necessity**

Sick leave policy "falls short of this business necessity because the *policy operates based upon members'* ***use of sick leave*** rather than upon the member's medical condition or employment duties." *Pa. State Troopers Ass'n v. Miller*, 621 F. Supp. 2d 246, 260 (M.D. Pa. 2008) (emphasis added).

"No reasonable factfinder could conclude that an inquiry triggered by a single day's absence from work is the type of reasonable expectation discussed above." *Fountain v. N.Y. State Dep't of Corr. Servs*., 190 F. Supp. 2d 335, 340 (N.D.N.Y 2002) (summary judgment initially reversed due to issues of fact in *Conroy, infra*). On remand, the District Court acknowledged that "the general diagnosis requirement of the DOCS Directive is an 'inquiry' under that ADA provision . . . violates the ADA unless such examination or inquiry is shown to be job-related and consistent with business necessity." *Fountain v. N.Y. State Dep't of Corr. Servs.*, 99-CV-389 (N.D.N.Y June 23, 2005); 2005 U.S. Dist. LEXIS 12455, 16.

"With respect to each justification, the employer must show (1) that the claimed purpose is in fact a business necessity, (2) that the policy genuinely contributes to it, and (3) is reasonably defined." *Fountain, supra.* (citing *Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.*, 341 F. Supp. 2d 432, 446-47 (S.D.N.Y. 2004)). The court again granted summary judgment as defendant failed to show their now " three-day absence general diagnosis inquiry requirement serves a business necessity through either of its stated justifications; ensuring officers can perform their duties or to prevent the spread of infectious disease" such that the inquiry violated the ADA. *Id* at 31.

The EEOC further publishes on its website its Enforcement Guidance and Questions and

Answers regarding disability inquiries. Question 17 in both of these documents answer the question of "May an employer make disability-related inquiries or require a medical examination when an employee who has been on leave for a medical condition seeks to return to work?" Both of these publications limit the questions that may be asked by the employer.

The Guidance provides that "If an employer **has a *reasonable belief* that an *employee's present ability to perform essential job functions* will be impaired by a medical condition** or that s/he will **pose a direct threat due to a medical condition**, the employer may make disability-related inquiries or require the employee to submit to a medical examination. Any inquiries or examination, however, **must be limited in scope to what is needed to make an *assessment of the employee's ability to work***. Usually, inquiries or examinations related to the specific medical condition for which the employee took leave will be all that is warranted. The **employer may not use the employee's leave as a justification for making far-ranging disability-related inquiries or requiring an unrelated medical examination**. *See* http://www.eeoc.gov/policy/docs/preemp.html (emphasis added). The Questions and Answers states "if an employer has a reasonable belief that an employee's **present** ability to perform essential functions will be impaired by a medical condition or that he or she will pose a direct threat because of a medical condition. Any inquiries or examination, however, must be limited in scope to what is needed to determine whether the employee is able to work. http://www.eeoc.gov/policy/docs/guidance-inquiries.html (emphasis in original).

**D. Louisiana Law Claims Should Not Be Dismissed on the Pleadings**

1. Right To Privacy

Louisiana courts have recognized that invasion of privacy in this Constitutional Article

includes protection from the unauthorized release of medical information by a public employer. *Fox v. City of Alexandria*, 07-810 (La. App. 3 Cir. 12/05/07); 971 So. 2d 468. Information about one's body is the most private and personal information of all people. "We hold that a right to privacy in one's medical and prescription records is an expectation of privacy that society is prepared to recognize as reasonable." *State v. Skinner*, 10 So. 3d 1212, 1219 (La. 5/5/09). The Louisiana Supreme Court again held that "Louisiana Constitution Art. I, § 5 specifies a right to privacy" and combined with the Fourth Amendment protects against arbitrarily conducted drug testing of police officers. *Richard v. Lafayette Fire & Police Civ. Serv. Bd.*, 08-C-1044 (La. 2/2/09); 8 So. 3d 509, 515.

2. State Civil Service Law

In *Ennis v. Department of Public Safety & Corrections*, 558 So. 2d 617 (La. App. 1 Cir. 1990), a State Civil Service Correction Employee was improperly terminated and entitled to reinstatement and backpay after refusing to comply with an unlawful order to sign an overly broad medical release to justify absence. The court affirmed that the plaintiff's privacy rights protected by Article I, § 5 were violated by defendant's order to sign an authorization allowing access to employee's entire medical history as it was a much broader disclosure than justified in an attempt to verify the employee's specific absences from duty; the authorization did not designate a specific person to whom medical information is to be disclosed, and it did not limit the disclosure to only such information as is genuinely relevant to the employer's need to know. *Id*. at 624. Louisiana civil service law provides police officers and firefighters employed by the City identical sick leave of not less than fifty-weeks per calendar year. La. R.S. 33:2214(B)(1) and La. R.S. § 33:1995. The City's officers and firefighters are subject to regulations and authority of the Shreveport Municipal Fire and

Police Civil Service Board. La. R.S. § 33:2476.1 & La. R.S. § 33:2477.

## IV. ARGUMENT

### A. SPD 301.06 and SPD-3 Violate Rehabilitation Act

1. Undisputed Policy and Form Inquire About Future Disability Issues

SPD 301.06 and the SPD-3 form violate the Rehabilitation Act as they seek information about the likelihood of future possible absences from work and is designed solely to reveal information about such possible disability status. It is undisputed that the information is seeking to learn about medical conditions that could affect an officer's future ability to work as opposed to the officer's past absences. The City admits this and attempted to justify the request for this information without showing it was needed due to the current absence or any other legitimate reason.

2. Inquiry Triggered Solely By Third Absence of Year

This information about future absences is required after the third absence in a year – including non-consecutive absences. Thus, absences three and half months apart for three different medical conditions triggers the City's investigation into the officer's medical condition and potential disability. This inquiry is triggered solely by an officer taking a day of sick leave and not by anything doing with the officer's condition or ability to perform and therefore it violates the Rehabilitation Act *Pa. State Troopers Ass'n, supra* at 246.

3. City's Argument Fails to Meet Required Standard

Although the City argues in its brief information may present a safety concern and may impact an officer's ability to apprehend violent criminals or impair their judgment in use of force, there is no factual information within the record to reach these conclusions. Huddleston's affidavit does not address apprehending criminals or use of force. Mere arguments are not evidence and

cannot justify violation of Rehabilitation Act.

Although Huddleston's affidavit generically states that awareness of any chronic condition allows the Department to ensure the safety of other officers, schedule officers to provide adequate coverage, and determine if an officer is able to perform essential functions, the affidavit does not state how or why this information is needed due to an officer's third non-consecutive absence. Furthermore, his affidavit fails to explain how a possibility of missing unknown days in the future will effect the ability to schedule officers. There simply is nothing in his affidavit that provides any justification for needing this information after the third non-consecutive absence of the year.

4. Automatic Inquiry is Overbroad and More Intrusive than Necessary

The City has offered no justification or need for such information after only three days absent in a year. This requirement is overbroad and more intrusive than necessary – particularly when the City already has a mechanism in place to require fit for duty examinations upon reasonable cause. Thus, this automatic mandatory inquiry into possible future absences violates the Rehabilitation Act. *See Young v. UPS, supra* 49; *Conroy* at 97-98; and *Fountain, supra* at 31.

4. Automatic Inquiry Is Not Based on Reasonable Determination of Officer

The automatically required inquiry into possible future absences is not based upon any determination that an officer is incapable of performing his job, has frequent absences, has a known disability that previously impacted work, declined productivity, or any other specific need to determine the capability of doing the job. The inquiry into chronic condition and possible absences is solely due to being absent the third time in one year – after a physician has released the officer to return to full duty. Thus, there is no justification for the inquiry since the physician has already advised the City that the employee is capable of performing the duties of a police officer by returning

the officer to the full duty. *Brownfield, supra* at 1146; *Franklin v. City of Slidell, supra,* at 655-56; 29 CFR PART 1630 APPENDIX; *Young v. UPS, supra* 49; *Conroy* at 97-98; and *Fountain, supra* at 31.

**B. State Law Claims Should Not be Dismissed**

The plaintiffs properly alleged claims under Louisiana law and these claims must also be reinstated. As shown above, the unreasonable access demanded by defendant for missing only one day of work is extremely burdensome and not reasonably related to the purported justification for same. Plaintiff walker plead and filed an affidavit regarding her medical information being disclosed. Sgt. Carter's deposition testimony shows that medical information is being disclosed on a regular basis as the City is not taking proper precautions to secure the information. Just as the employer in *Ennis* did not need access to this extensive private medical information for possible future absences – neither does the defendant. The defendant does not require this of its firefighters who have the same sick leave options under state law. It is an unwarranted invasion of privacy and an effort to infringe upon plaintiffs' civil service rights for missing only one day of work.

**CONCLUSION**

For the reasons stated above, the Motion for Summary Judgment must denied and the Motion to Dismiss the state law claims pursuant to 12(b)(6) must be denied in its entirety.

Respectfully submitted,

BREEDLOVE LAW FIRM

By: s/ Pamela N. Breedlove
Pamela N. Breedlove, Bar Roll No. 21773
216 Rolling Meadow Lane
Bossier City, LA 71112
P.O. Box 8667
Bossier City, LA 71113-8667

Telephone : (318) 423-0845
Facsimile : (318) 553-5176
ATTORNEYS FOR PLAINTIFFS, FRED TAYLOR, VICKIE WILLIAMS, and JESSICA WALKER

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing document has this date been filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system:

Mr. Edwin H. Byrd, III
400 Texas Street, Suite 400
P.O. Box 1786
Shreveport, LA 71166-1786

Bossier Parish, Louisiana this 17th day of February, 2016.

s/ Pamela N. Breedlove
OF COUNSEL