UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**FRED TAYLOR, ET AL.**           **CIVIL ACTION NO. 13-2227**

**VERSUS**                        **JUDGE ELIZABETH ERNY FOOTE**

**CITY OF SHREVEPORT, ET AL.**    **MAGISTRATE JUDGE HORNSBY**

### MEMORANDUM RULING

Before the Court is a motion entitled "Motion for Summary Judgment and Motion To Dismiss," filed by the Defendants. Record Document 39. The Plaintiffs, who are all officers of the Shreveport Police Department ("SPD"), allege that SPD's sick-leave policy violates the Rehabilitation Act, Louisiana disability discrimination law, and the right to privacy under the Louisiana Constitution. The Defendants argue that they are entitled to summary judgment on the Rehabilitation Act claims because the sick-leave policy is job-related and consistent with business necessity. The Defendants also argue that the state law claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons announced below, the Court denies the Defendants' motion with respect to the Rehabilitation Act claims, grants the motion with respect to the Louisiana disability discrimination claims, and denies the motion with respect to the Louisiana constitutional claims.

**I.     Factual & Procedural Background**

The Plaintiffs initially alleged that several aspects of SPD's sick-leave policy, which is memorialized in a general order entitled "SPD 301.06," and related conduct by SPD

officers violated the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act, and Louisiana law.  The Court dismissed the Plaintiffs' federal claims under Rule 12(b)(6) and dismissed the Plaintiffs' remaining state law claims for want of jurisdiction.  Record Document 24.  On appeal, the Fifth Circuit affirmed dismissal of all of the Plaintiffs' federal claims except their claim that SPD 301.06's inquiry into whether an officer suffers from a "chronic condition" violates the Rehabilitation Act.  Taylor v. City of Shreveport, 798 F.3d 276, 286-87 (5th Cir. 2015).  The Fifth Circuit held that SPD 301.06's chronic-condition inquiry gives rise to a prima facie claim of discrimination under the Rehabilitation Act.  Id. at 286.  The court further determined that while it was premature for it to evaluate whether the Defendants could rebut the Plaintiffs' prima facie case, "[o]n remand, the City will have the burden to show that this [chronic-condition] aspect of the SPD-3 Form requirement is 'job-related and consistent with business necessity.'"  Id. (citation omitted).  With a federal claim before the Court again, the Fifth Circuit also vacated dismissal of the state law claims, allowing the Court on remand to decide whether to exercise supplemental jurisdiction over them.  Id. at 289.

     SPD 301.06 provides that sick leave must be documented after an officer uses any two days of undocumented sick leave in a calendar year.[1]  Record Document 42-2, pp. 7-8.  When an officer uses documented sick leave, a healthcare provider must complete a certificate indicating, among other things, if the "condition [that caused the officer's

---

[1] SPD 301.06 was updated in 2015.  Record Document 42-2, p. 2.  Except for asking about infectious diseases, which is explained in the text below, SPD did not materially alter the relevant portions of SPD 301.06 when it revised the policy.  Compare Record Document 42-2, pp. 7-8, with Record Document 3-2, pp. 7-8.

absence] is chronic and whether intermittent absences related to the condition may be possible." Record Document 42-2, p. 8. The healthcare provider also must indicate the diagnosis, treatment, and ability of the officer to return to work. Record Document 42-2, p. 8. In practice, the healthcare provider only completes the chronic-condition component of the sick-leave certificate if the officer is able to return to work. Record Document 39-1, p. 2. A form that the healthcare provider may, but need not, use to complete the certificate also asks whether there are "infectious or contagious concerns" relating to the officer's absence.[2] Record Document 42-2, p. 12.

The officer must furnish the sick-leave certificate to his timekeeper or supervisor "as soon as possible when leaving the medical appointment," but apparently no later than upon his return to work, to "permit the timekeeper/supervisor to make staffing adjustments and maintain accurate attendance records." Record Document 42-2, p. 8. The supervisor or timekeeper then must forward the certificate to SPD's human resources office, where SPD 301.06 instructs SPD to exclusively maintain sick-leave certificates or any copies thereof. Record Document 42-2, p. 8. If the certificate indicates that the officer's condition is chronic, then further certification of the officer's chronic condition is required. Record

---

[2] The healthcare provider may complete the sick-leave certificate on either a specific SPD-3 form or on the provider's letterhead. The only difference between these formats is that the SPD-3 form alone asks whether there are any infectious concerns related to the officer's absence. See Record Document 42-2, p. 12. The Fifth Circuit has determined, however, that because the healthcare provider must disclose the same information about the officer's chronic condition in either format, the format chosen by the healthcare provider in disclosing information regarding the officer's chronic condition is immaterial to the issue of whether requiring the disclosure of that information violates the Rehabilitation Act. Taylor v. City of Shreveport, 798 F.3d 276, 286 n.47 (5th Cir. 2015).

Document 42-2, p. 8. Once that certificate is on file with human resources, the officer may document absences related to the condition by completing a sick-leave certificate directly without involving a healthcare provider. Id. An officer may also voluntarily complete a chronic-condition certificate. Record Document 42-4, pp. 2-3.

According to Defendant Duane Huddelston, Deputy Chief of SPD, the purpose of inquiring into an officer's chronic condition after documented sick leave is four-fold. Record Document 39-1. First, the policy helps SPD determine whether an officer is able to perform the essential functions of his job. Record Document 39-1, p. 4. Second, the policy ensures the safety of other officers. Record Document 39-1, p. 4. Third, the policy "assists the Department in scheduling officers in order to provide adequate police coverage." Record Document 39-1, p. 3. Fourth, the policy allows SPD "to determine if an additional medical examination is necessary before allowing an officer to return to work." Record Document 39-1, p. 4.

The Plaintiffs also allege that in practice, SPD does not properly maintain sick-leave certificates, allowing for the casual disclosure of officers' medical information to other officers and, in rare instances, persons beyond SPD. Record Document 42-4, pp. 3-5. Specifically, Michael Carter ("Carter"), an SPD officer and former Plaintiff, attests that superiors leave other officers' sick-leave certificates on their desks or other places in plain sight. Record Document 42-4, pp. 3-4. Although Carter indicates that exposure of the sick-leave certificates is usually unintentional, he alleges that in one instance an officer deliberately posted medical information regarding another officer on Facebook. Record Document 42-4, pp. 4-5. Plaintiff Jessica Walker ("Walker") also alleges that while she was

taking sick leave, Lt. Rita James discussed her medical condition with other officers on multiple occasions to insinuate that Walker had fabricated the condition causing her absence.  Record Document 16, p. 9; Record Document 19, p. 1.

The Defendants now move to dismiss all of the Plaintiffs' claims.  They argue that the Court should issue summary judgment on the Rehabilitation Act claims because they have shown as a matter of law that the inquiry falls within the business-necessity exception established by statute.  The Defendants also urge the Court to dismiss both of the Plaintiffs' state law claims pursuant to Rule 12(b)(6).  There they argue that the Plaintiffs' claims under Louisiana's disability discrimination statute fail because the Plaintiffs have not plead that they are disabled persons.  And they argue that the Plaintiffs have failed to plead a claim of invasion of privacy under the Louisiana Constitution because they have not alleged that their medical information was published to a third party.

## II.     Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. If the party moving for summary judgment fails to satisfy its initial burden of

demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant, Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

To survive a challenge under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Courts are required to accept the plaintiff's "well-pleaded" facts as true and construe the complaint in a light favorable to that plaintiff. In re Great Lakes Dredge & Dock Co., 624 F.3d 201, 210 (5th Cir. 2010) (citations omitted). Nonetheless, courts are not required to accept the veracity of legal conclusions framed as factual allegations. Iqbal, 556 U.S. at 678 (reasoning that under Rule 8, it is not sufficient to merely recite a cause of action's elements with supporting conclusory statements). Overall, determining when a complaint states a plausible claim is a context-specific task, requiring courts to rely on judicial experience and common sense to assess when a complaint crosses the line from conceivable to plausible. Id. at 678-80.

A claim is facially plausible when a plaintiff pleads factual content that permits the court to reasonably infer a defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678-79. This plausibility standard is not a probability requirement, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

### III. Discussion

#### A. Rehabilitation Act Claims

The Defendants argue that they are entitled to summary judgment on the Plaintiffs' Rehabilitation Act claims because the chronic-condition component of SPD 301.06 is a business necessity. Section 504 of the Rehabilitation Act prohibits any program or activity receiving federal financial assistance from discriminating against persons solely because of their disability. 29 U.S.C. § 794(a) (2012). The complaint alleges that the City of Shreveport receives federal funds for SPD and the Defendants provide no evidence suggesting otherwise. Record Document 16, p. 7. SPD also qualifies as a "program or activity" within the meaning of the Rehabilitation Act. Taylor, 798 F.3d at 283. The Rehabilitation Act further defines discrimination by incorporating the definitions of discrimination set forth in Title I of the ADA. 29 U.S.C. § 794(d). Those definitions provide in pertinent part that:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such

> examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A).[3]  To establish a prima facie claim that a medical inquiry violates the Rehabilitation Act, the plaintiff must show that the inquiry is "intended to reveal or necessitates revealing a disability." Taylor, 798 F.3d at 284 (quoting Lee v. City of Columbus, 636 F.3d 245, 255 (6th Cir. 2011)).

A defendant may rebut the plaintiff's prima facie case by demonstrating, pursuant to the language of the ADA, that the inquiry is "job-related and consistent with business necessity." Id. at 286 (quoting 42 U.S.C. § 12112(d)(4)(A)).  To establish that SPD 301.06's chronic-condition inquiry qualifies as business necessity under § 12112(d)(4)(A), the Defendants have the burden of satisfying a two-pronged test. See Conroy v. New York State Dep't of Corr. Servs., 333 F.3d 88, 97-98 (2d Cir. 2003).[4] First, the Defendants must demonstrate that the business necessity they seek to promote or protect through SPD 301.06's chronic-condition inquiry is "vital to the business." See id.  Second, the Defendants must show that the chronic-condition inquiry is "no broader or more intrusive than is necessary" to further that business necessity. See id.  The Defendants argue that

---

[3] The Plaintiffs have not asserted discrimination claims directly under the ADA because they have not alleged that they qualify as disabled persons as the ADA defines that term.  Unlike the Rehabilitation Act, the ADA requires that the plaintiff demonstrate that he is disabled in order to invoke the statute's protections for disabled persons.  See Taylor, 798 F.3d at 284.

[4] The Fifth Circuit has not espoused standards for the business-necessity exception under 42 U.S.C. § 12112(d)(4)(A).  See Franklin v. City of Slidell, 969 F. Supp 2d 644, 655 (E.D. La. 2013).  However, Conroy v. New York State Department of Correctional Services, 333 F.3d 88 (2d Cir. 2003), is generally perceived as the lead case on the topic.

the chronic-condition inquiry in SPD 301.06 serves four different business necessities: (1) officers' fitness for duty, (2) the safety of other officers when a sick officer returns to work, (3) efficient scheduling of officer shifts, and (4) ensuring that a medical examination is not necessary before allowing an officer to return to work.[5] The Court addresses each of these proposed business necessities in turn.

### i. Fitness for Duty

The Defendants first must show that officers' fitness for duty is vital to SPD's business. See Conroy, 333 F.3d at 97. Ensuring that employees are physically and psychologically fit to perform their duties qualifies as a business necessity that is vital to the business. Pennsylvania State Troopers Ass'n v. Miller (PSTA), 621 F. Supp. 2d 246, 257 (M.D. Pa. 2008). Further, "a police department must ensure that its officers are in peak physical and mental condition." Taylor, 798 F.3d at 286 (citing Crain v. Bd. of Police Comm'rs of Metro. Police Dep't of City of St. Louis, 920 F.2d 1402, 1409 (8th Cir. 1990)). Ensuring that SPD officers are physically and mentally able to perform the essential functions of their rob is therefore vital to the business of SPD.

Next, the Defendants must demonstrate that the chronic-condition component of SPD 301.06 is "no broader or more intrusive than is necessary" to furthering SPD's need to ensure its officers are fit for duty. See Conroy, 333 F.3d at 98. The chronic-condition component of SPD 301.06 fails this test in two respects. First, the events triggering an

---

[5] In their reply brief, the Defendants stated that another justification for requiring the disclosure of a chronic condition is to ensure that "all officers are in peak physical and mental condition." The Court construes this justification as a variant of the fitness-for-duty justification.

inquiry into an officer's chronic condition under SPD 301.06 do not sufficiently suggest that the officer is unfit to perform his duties. Generally, an employer may inquire into a disability even before work performance begins to decline if "the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties." Id.; accord Brownfield v. City of Yakima, 612 F.3d 1140, 1146 (9th Cir. 2010) (medical examination can meet business necessity exception "if the employer is faced with 'significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job.'" (quoting Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 811 (6th Cir. 1999))). Taking a few days of sick leave, by itself, does not constitute a legitimate, non-discriminatory reason to doubt a law enforcement officer's ability to perform his duties. See PSTA, 621 F. Supp. 2d at 250, 265 (no legitimate, non-discriminatory reason to doubt a correction officer's ability to perform duties after absence of only one day); Fountain v. N.Y. State Dep't of Corr. Servs., No. 99-CV-389, 2005 WL 1502146, at *7 (N.D.N.Y. June 23, 2005) (same for absence of four consecutive days). Under SPD 301.06, SPD inquires into an officer's chronic condition after he takes any three days of sick leave in a calendar year. SPD 301.06 is therefore broader than necessary because its chronic-condition inquiry is not triggered by a legitimate, non-discriminatory reason to doubt an officer's capacity perform his duties. See PSTA, 621 F. Supp. 2d at 265; Fountain, 2005 WL 1502146, at *7.

Second, even if SPD 301.06 were to require a legitimate, nondiscriminatory reason to doubt job performance before it required a chronic-condition inquiry, the inquiry would still be broader than necessary because it requires disclosure of chronic conditions

regardless of whether they affect job performance or attendance. Inquiries "must be limited in scope to what is needed to make an assessment of the employee's ability to work." Scott v. Napolitano, 717 F. Supp. 2d 1071, 1083 (S.D. Cal. 2010) (quoting EEOC Compliance Manual 902:0190 (2002)). As written, SPD 301.06 instructs the healthcare provider to "state if the condition is chronic and whether intermittent absences related to the condition may be possible." Record Document 42-2, p. 8. The inclusion of "and" in the directive means that the disclosure of a chronic condition is not contingent on the condition causing intermittent absences. Moreover, even if this defect were cured, intermittent absences alone are not indicative of an officer's fitness for duty. As a result, SPD 301.06's chronic-condition inquiry is broader than necessary because it is "not limited in scope to what is needed to make an assessment of the employee's ability to work." Scott, 717 F. Supp. 2d at 1083. Because the Defendants have failed to show as a matter of law that SPD 301.06 is no broader or more intrusive than is necessary to ensure that SPD officers are fit for duty, the asserted business necessity of officers' fitness for duty does not entitle the Defendants to summary judgment. See Conroy, 333 F.3d at 98.

The Defendants argue that Fountain v. New York State Department of Correctional Services is distinguishable from this matter. In Fountain, the inquiry at issue required New York correctional officers who were on sick leave for four or more consecutive days to provide medical documentation for their absence that indicated, among other things, a general diagnosis of the cause of their absence. 2005 WL 1502146, at *1-2. In holding that fitness for duty did not qualify as a business necessity, the court reasoned that the diagnosis inquiry failed to ensure officers were fit for duty in part because the department

of correctional services did not require officers to submit their documentation immediately upon returning to work. Id. at *7.

The Defendants distinguish this matter from Fountain on two grounds. First, SPD, unlike the defendant in Fountain, does require officers taking documented sick leave to submit a sick-leave certificate as soon as they return to work. Second, unlike the inquiry in Fountain, the inquiry at issue in this suit seeks information related to an officer's chronic-condition, not an officer's general diagnosis. The Defendants' first point, though well taken in its own right, fails to account for the other reasons that this Court and the court in Fountain determined the inquiries before them did not qualify as a business necessity. In Fountain, as in this matter, the threshold problem with the inquiry is that the event triggering the inquiry, a few days of sick leave, is not indicative of an officer's fitness for duty. See id. Furthermore, the fact that SPD requires prompt submission of a sick-leave certificate does not cure the overly broad language in SPD 301.06's chronic-condition inquiry. The Defendants' second point is inapposite because it mistakes the issue before the Court. The Fifth Circuit has already held that the chronic-condition inquiry in SPD 301.06 gives rise to a prima facie claim of discrimination under the Rehabilitation Act. Taylor, 798 F.3d at 286. Thus, the burden is now on the Defendant to show that there is a business necessity justifying the presumptively illegal chronic-condition inquiry, not to show that the chronic-condition inquiry does not satisfy the first prong of our inquiry.

The Defendants also argue that the policy is no more intrusive than necessary because it does not require the healthcare provider to disclose the nature of the chronic condition, instead requiring only that the provider disclose the fact that the officer suffers

from a chronic condition and whether intermittent absences related to the condition may be possible. Record Document 45, pp. 3-4. This is not necessarily so. The policy provides that "if the condition is chronic, evaluation and certification is required within each twelve-month period." Record Document 42-2, p. 8. Although neither party provides any information on the extent of this further certification and evaluation, its existence creates a dispute of material fact that the Court must resolve in favor of the Plaintiffs at this stage in the litigation. The Defendants' assertion that SPD 301.06 does not require the disclosure of the nature of an officer's chronic condition is therefore unavailing.

      ii. Officer Safety

The Defendants next contend that ensuring the safety of other SPD officers qualifies as a business necessity. Workplace safety constitutes a business necessity that is vital to SPD. See Scott, 717 F. Supp. 2d at 1083. However, the Defendants have failed to meet their burden of showing that as a matter of law, the chronic-condition inquiry in SPD 301.06 is no broader or more intrusive than necessary to further this interest. The chronic-condition inquiry in SPD 301.06, as discussed above, is generic and does not limit itself to chronic conditions that could endanger other officers. Although a form that the healthcare provider may use to complete a sick-leave certificate asks the provider to indicate whether the absence is related to an infectious disease, that portion of the sick-leave form is not challenged by the Plaintiffs. The Defendants have therefore failed to demonstrate as a matter of law that officer safety qualifies as a business necessity under § 12112(d)(4)(A).

iii. Scheduling

The Defendants argue that ensuring the efficient scheduling of officers qualifies as a business necessity. Because "maintain[ing] adequate coverage on all shifts to manage daily law enforcement tasks" is of paramount interest to any law enforcement agency, ensuring continuity in scheduling constitutes a business necessity that is vital to SPD. See PSTA, 621 F. Supp. 2d at 255. The Defendants, however, have failed to show that the chronic-condition inquiry is, as a matter of law, no broader or more intrusive than necessary to ensure efficient scheduling of officer shifts. Again the critical defect in the chronic-condition is that it is overly broad, i.e., it is not limited to chronic conditions that could upset SPD's ability to schedule officer shifts. The Defendants have therefore failed to demonstrate as a matter of law that scheduling qualifies as a business necessity under § 12112(d)(4)(A).

iv. Whether an Officer Requires Further Medical Testing

The Defendants finally argue that determining whether an officer requires further medical testing qualifies as a business necessity. The Defendants have failed to provide sufficient facts to establish that the further medical testing, by itself, constitutes a business necessity that is vital to SPD. By Defendant Duane Huddleston's own admission, the chronic-condition portion of the sick-leave certificate is only completed when the healthcare provider clears the officer for full duty. Because the officer would already be cleared for work when disclosing a chronic condition, the Court can find no vital interest in SPD needing to further test the officer. Consequently, the Defendeants have failed to demonstrate as a matter of law that any of their proffered justifications for the chronic-

condition component of SPD 301.06 qualify as a business necessity under 42 U.S.C. § 12112(d)(4)(A). The Court must therefore deny the Defendants' motion for summary judgment with respect to the Plaintiffs' Rehabilitation Act claims.

    B.  <u>Disability Discrimination Claims under Louisiana Law</u>

The Defendants contend that the Court should dismiss the Plaintiffs' claims under Louisiana's disability discrimination statutes, <u>see</u> La. Stat. Ann. §§ 23:322-324 (2015), because the Plaintiffs have not alleged that they are disabled. Under Louisiana law, "no otherwise qualified person with a disability shall, on the basis of a disability, be subjected to discrimination in employment." <u>Id.</u> § 23:323. To establish a prima facie case under section 23:323, the Plaintiffs must show that (1) they suffer from a disability, as defined by the statute, (2) they are qualified for their jobs, and (3) an adverse employment decision was made solely because of the disability. <u>Thomas v. La. Casino Cruises, Inc.</u>, 2003-1937, p. 3 (La. App. 1 Cir. 6/25/04), 886 So. 2d 468, 470 (citation omitted). Section 23:322 defines a person with a disability as "any person who has a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such an impairment, or is regarded as having such an impairment." La. Stat. Ann. § 23:322(3). "Major life activities" under the statute include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." <u>Id.</u> § 23:322(7).

Nowhere in the Plaintiffs' original or two amended complaints do the Plaintiffs either directly plead that they are disabled persons or allege facts from which the Court could plausibly infer that they are disabled. Although the Plaintiffs assert in their rebuttal to the

Defendants' uncontested statement of facts that Officer Walker suffers from chronic migraine headaches, Record Document 42-1, p. 4, this assertion is not contained in the complaint and is otherwise wholly unsupported by any evidence. Having failed to plead that they are disabled persons, the Plaintiffs have failed to state claims of disability discrimination under Louisiana law that are entitled to relief. See Thomas, 2003-1937, at 3, 886 So. 2d at 470; Twombly, 550 U.S. at 570. The Court accordingly dismisses with prejudice the Plaintiffs' claims of disability discrimination under Louisiana law. See Fed. R. Civ. P. 12(b)(6).

B. Invasion of Privacy Claims under the Louisiana Constitution

The Defendants argue that the Plaintiffs have failed to state viable claims that the Defendants violated the Plaintiffs' right to privacy under the Louisiana Constitution.[6] Article I, section 5 of the Louisiana Constitution provides in relevant part that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. I, § 5. The Plaintiffs allege that the Defendants violated their right to privacy under the Louisiana Constitution when (1) an SPD officer published medical information about another SPD officer on Facebook, (2) Lt. Rita James discussed Officer Walker's medical condition with other officers on multiple occasions, and (3) SPD implemented the chronic-condition

---

[6] In Louisiana, an invasion of privacy may give rise to a claim under either Article I, section 5 of the Louisiana Constitution or article 2315 of the Louisiana Civil Code as a tort claim. See Jaubert v. Crowley Post-Signal, Inc., 375 So. 2d 1386, 1388 (La. 1979). The Plaintiffs, however, have only asserted constitutional privacy claims against the Defendants.

provision of SPD 301.06.

As to the first allegation, the Plaintiffs lack standing to assert any claim stemming from the Facebook post because their medical information was never allegedly published. According to Officer Carter, the publication of medical information on Facebook involved Richard Turpin and Rod Demery, neither of whom are Plaintiffs. Record Document 42-4, p. 5. Because the Plaintiffs failed to plead that the Facebook incident caused them to suffer injury in fact, they lack standing to assert any claim arising therefrom. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).

The second and third allegations, however, survive 12(b)(6) dismissal. Although the Louisiana Supreme Court has dedicated scant attention to constitutional privacy claims,[7] at least one lower Louisiana court has held that the Louisiana Constitution prevents a state employer from disclosing an employee's medical records to third parties. See Fox v. City of Alexandria, 2007-810 (La. App. 3 Cir. 12/5/07), 971 So. 2d 468. In Fox, an employee of the city of Alexandria, Louisiana, sued the city for disclosing her medical history to a mortgage lender in response to the lender's query about whether she had accrued any

---

[7] See State v. Skinner, 2008-2522, p. 6 (La. 5/5/09), 10 So. 3d 1212, 1216 ("The reasonable expectation of privacy in medical and prescription records is res nova to this Court."). The Court notes that while Skinner is the only decision from the Louisiana Supreme Court regarding medical information and the constitutional right to privacy in Louisiana, its holding is not instructive for the issues before the Court because it only addressed whether law enforcement must seek a warrant before subpoenaing medical and prescription records kept by medical providers and pharmacies. See id. 2008-2522, pp. 6-10, 10 So. 3d at 1216-18. Although the holding was guided in part by the substantive due process right to privacy under the federal constitution, these references are too broad to inform the Court's analysis today. See id. (citing Whalen v. Roe, 429 U.S. 589 (1977)).

days of vacation. 2007-810, at 1, 971 So. 2d at 469. Because the city opined in its disclosure that the plaintiff's medical history would prevent her from returning to work, the mortgage lender rejected the plaintiff's loan application. Id. The court held that the employee plaintiff had plead a viable claim under article I, section 5 of the Louisiana Constitution because she had alleged that the city had "released private information pertaining to Fox which caused her to suffer general and monetary damages." Id. 2007-810, at 4, 971 So. 2d at 471.

Like the plaintiff in Fox, Officer Walker alleges that her supervisor disclosed information about her medical condition to third persons without authorization from either the employer or the employee. See 2007-810, at 1, 971 So. 2d at 469. Although the third party in Fox was unlike the SPD officers who heard about Officer Walker's condition because it was not employed by the party responsible for the challenged disclosure, see id., the Defendants have not provided, and the Court has not found, any case law that suggests this distinction would defeat a privacy claim brought under the Louisiana Constitution. Accordingly, the Court declines to dismiss Officer Walker's claim that the discussion of her medical information by Lt. Rita James violated the Louisiana Constitution. However, to the extent that the other Plaintiffs in this suit assert that the disclosure of medical information to other SPD officers violated their right to privacy under the Louisiana Constitution, their claims are dismissed because they have not alleged that their medical information was disclosed and thus lack standing to assert such claims. See Lujan, 504 U.S. at 560.

With respect to the third allegation, at least one lower Louisiana court has held that

the Louisiana Constitution prevents a state employer from requiring an employee to furnish medical records that are not related to a legitimate business necessity. See Ennis v. Dep't of Pub. Safety & Corr., Dixon Corr. Inst., 558 So. 2d 617 (La. Ct. App. 1990). In Ennis v. Department of Public Safety & Corrections, Dixon Correctional Institute, a corrections officer brought an administrative action challenging his termination. 558 So. 2d at 624. The officer was terminated because he refused his supervisors' direct order to sign a release granting them access to all of his medical records, which the supervisors had requested in light of their suspicions that the officer was fabricating the reasons for taking sick leave. Id. at 624. On appeal, the question became whether the order was illegal. See id. The court held the order violated his right to privacy under article I, section 5 of the Louisiana Constitution. Id. at 624-25. According to the court, the order violated the Louisiana Constitution because it was overly broad, i.e., although ordering the officer to release medical information related to his questionable absences would have been legal, ordering the officer to release his entire medical history was illegal because it sought medical information unrelated to the absences at issue. Id. at 624.

Like the inquiry at issue in Ennis, SPD 301.06's chronic-condition inquiry is potentially overly broad because it seeks more information than is necessary for any business necessity. See 558 So. 2d at 624. The Court therefore declines to dismiss the Plaintiffs' claim that the chronic-condition inquiry in SPD 301.06 violates the Louisiana Constitution.

**IV.    Conclusion**

For the reasons assigned above:

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment and Motion To Dismiss, Record Document 39, is hereby **GRANTED IN PART** and **DENIED IN PART**.

Insofar as the motion seeks summary judgment on the Plaintiffs' Rehabilitation Act claims, the motion is **DENIED**.

Insofar as the motion seeks dismissal of the Plaintiffs' claims under Louisiana disability discrimination law, the motion is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**.

Insofar as the motion seeks to dismiss the Plaintiffs' Louisiana constitutional claims, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that the parties contact the chambers of Judge Hornsby by **August 31, 2016**, to set a scheduling conference in this matter.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 24th day of August, 2016.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE